UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SALLY M. O/B/O C.B.,

    Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

---

20-CV-6210-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 19)

Plaintiff Sally M.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) on behalf of her minor child, C.B., seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 13) is denied and defendant's motion (Dkt. No. 17) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

On July 5, 2016, plaintiff applied for SSI on behalf of C.B., a child under age eighteen, alleging disability beginning November 10, 2015, due to attention deficit hyperactivity disorder ("ADHD") and behavioral problems. (Tr. 79, 159-63, 173)[3] Plaintiff's claim was denied at the initial level, and again after a *de novo* hearing before an Administrative Law Judge ("ALJ") on December 10, 2018. (Tr. 10-25, 40-69, 82-92, 97-98) The Appeals Council denied further review of the ALJ's decision on February 5, 2020. (Tr. 1-5) This action followed. (Dkt. No. 1)

## DISCUSSION

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*,

---

[2] The Court presumes the parties' familiarity with the case.

[3] References to "Tr." are to the administrative record in this case. (Dkt. No. 12)

312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

An individual under the age of eighteen is considered disabled within the meaning of the Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner has set forth a three-step process to determine whether a child is disabled as defined under the Act. *See* 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaged

in substantial gainful work activity. *Id.* § 416.924(b). If so, the child is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the child has a medically determinable impairment(s) that is "severe." *Id.* § 416.924(c). If the child does not have a severe impairment(s), he or she is not disabled. *Id.* If the child does have a severe impairment(s), the ALJ continues to step three. At step three, the ALJ examines whether the child's impairment(s) meets, medically equals, or functionally equals the listed impairments in Appendix 1 to Subpart P of Part 404 of the Commissioner's regulations (the "Listings"). *Id.* § 416.924(d). In determining whether an impairment(s) functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must result in "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). A child has a "marked" limitation when his or her impairment(s) "interferes seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2). A child has an "extreme" limitation when his or her impairment(s) "interferes very seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3). If the child has an impairment(s) that meets, medically equals, or functionally equals the Listings, and the impairment(s) meets the Act's duration requirement, the ALJ will find the child disabled. *Id.* § 416.924(d).

III. *The ALJ's Decision*

The ALJ first found that C.B. was a preschooler on the date of the application and a school-age child on the date of the administrative decision. (Tr. 13) The ALJ then followed the three-step process for evaluating C.B.'s SSI claim. At the first step, the ALJ found that C.B. had not engaged in substantial gainful activity since July 5, 2016, the application date. (Tr. 13) At the second step, the ALJ determined that C.B. had the severe impairments of ADHD and anxiety. (Tr. 13) At the third step, the ALJ found that C.B. did not have an impairment or combination of impairments that meets or medically equals the seventy of one of the listed impairments. (Tr. 13) The ALJ then proceeded to consider whether C.B. had an impairment or combination of impairments that functionally equaled the Listings, but concluded that she did not have an impairment or combination of impairments that result in either marked limitations in two domains of functioning or extreme limitation in one domain of functioning. (Tr. 18-24) As a result, the ALJ found that C.B. had not been disabled within the meaning of the Act. (Tr. 24)

IV. *Plaintiff's Challenges*

Plaintiff seeks remand of the Commissioner's decision on the grounds that: (1) the ALJ did not properly weigh the teacher questionnaires with reference to the regulatory factors; and (2) the ALJ's domain findings were not supported by substantial evidence. (Dkt. No. 13-1 at 11-18)

**A. The ALJ properly evaluated the opinion evidence.**

Plaintiff first argues that the ALJ's evaluation of the questionnaires from C.B.'s teachers was "perfunctory" and failed to comply with the regulatory factors set forth in 20 C.F.R. § 416.927(c). (Dkt. No. 13-1 at 11-17)

5

With respect to opinions from nonmedical sources such as teachers, the applicable regulations set forth that the ALJ will consider only those factors outlined in 20 C.F.R. § 416.927(c) that are relevant to the particular opinion and facts of the case. *See* 20 C.F.R. § 416.927(f)(1).  After the ALJ has considered the relevant factors, he need only "generally" explain the weight given to such opinions in a manner that "allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." 20 C.F.R. § 416.927(f)(2); *see also, e.g., Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) ("[T]he ALJ is empowered with the discretion to afford less than controlling weight, or even no weight, to the opinion of 'other sources,'" as long as he "address[es] and discuss[es] the opinion.").

On October 22, 2018, Mr. Shanley, C.B.'s fourth grade teacher of seven weeks' duration, completed a questionnaire addressing the five domains of functioning. (Tr. 268-75)  In acquiring and using information, Mr. Shanley indicated that C.B. did not have any very serious problems, and the majority of the time had slight or no problems. (Tr. 269)  In attending and completing tasks, C.B. did not have any serious or very serious problems, but he noted that she was slow to start activities and was easily distracted. (Tr. 270)  He indicated that C.B. had no problems in the domains of interacting and relating with others, moving about and manipulating objects, and caring for herself. (Tr. 271-73)  The ALJ evaluated Mr. Shanley's opinion against the balance of the medical and nonmedical evidence and afforded partial weight to the opinion because the teacher had only known C.B. for seven weeks, but noted that it was consistent with the overall record that showed her symptoms improved with medication. (Tr. 16-17)

On October 24, 2018, Plaintiff's third grade teacher from 2017-2018, Mr. Cole, also completed a questionnaire with respect to C.B.'s functioning. (Tr. 277-84) He indicated that C.B. had slight to serious problems in acquiring and using information, but no very serious problems; obvious to very serious problems attending and completing tasks; slight problems to very serious problems interacting with others; and no problems to very serious problems in the domains of moving about and manipulating objects as well as caring for herself. (Tr. 278-82) The ALJ observed that Mr. Cole stated that medication had a positive effect on C.B.'s symptoms. (Tr. 16) Specifically, Mr. Cole noted that after taking medication, C.B. was "a completely different student . . . polite, on task," and that when she "was not on her medication, we knew as soon as she walked in" because she "was unable to follow morning routines, procedures, tend to lessons." (Tr. 283) The ALJ afforded partial weight to Mr. Cole's opinion because he had personal interaction with C.B. throughout the entire school year, but also noted that because Mr. Cole's opinion and other evidence indicated C.B. was not consistent in taking her medication, the opinion was not a true reflection of her abilities and behavior when compliant with treatment. (Tr. 16)

Here, the ALJ complied with agency regulations requiring him "generally" to explain the reasons for the weight given to these opinions. *See* 20 C.F.R. § 416.927(f)(2). As discussed in further detail in the following section, it is apparent from the face of the ALJ's decision that he properly considered the record as a whole in reaching his conclusions. In making the domain findings, the ALJ evaluated the opinions from Mr. Cole and Mr. Shanley in addition to school records, testimony from C.B. and her mother, and medical evidence. (Tr. 14-24)

Plaintiff's arguments that the ALJ's treatment of the opinion evidence was "perfunctory," and that his "characterization that . . . [her] limitations disappeared when C.B. took medication is not supported by the record," appear to request that the Court reweigh the evidence before the ALJ. (See Dkt. No. 13-1 at 11, 13) Yet it is well established that "[t]he ALJ has the responsibility of reviewing all the evidence, resolving inconsistencies, and making a determination consistent with the evidence as a whole." *Jeffrey C. v. Berryhill*, No. 18-CV-505, 2019 WL 3361256, *4 (N.D.N.Y. May 22, 2019); *see generally Carroll v. Sec'y of Health & Hum. Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) ("It is the function of the Secretary, not ourselves, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."). Plaintiff's claim of legal error in this regard must be rejected.

### B. The ALJ's domain findings were supported by substantial evidence.

Plaintiff further argues that the ALJ's domain findings were flawed because he relied on the "unsupported conclusion" that C.B.'s limitations improved with medication; and because he failed to consider Mr. Shanley's opinion throughout his evaluation of the domains. (Dkt. No. 13-1 at 17-19)

The ALJ found C.B. had less than marked limitations in acquiring and using information, attending and completing tasks, and interacting and relating with others; and no limitations in moving about and manipulating objects, caring for herself, and health and physical well-being. (Tr. 18-24) As noted above, C.B.'s teachers indicated her limitations within the different domains ranged from no problems at all to "very serious" problems. (Tr. 268-75, 277-84)

At the outset, assessments of "serious" and "very serious" problems in a domain are not necessarily inconsistent with an ALJ's conclusion that the child's limitations were "less than marked." See *White o/b/o T.R.W. v. Berryhill*, No. 17-CV-6367, 2019 WL 1367382, at *5 (W.D.N.Y. Mar. 26, 2019) (ALJ's determination of less than marked limitation in domain of acquiring and using information was based upon substantial evidence where teacher questionnaire indicated that plaintiff had problems ranging from "slight" to "very serious" in the activities associated with the domain); *Petrie ex rel. T.T. v. Colvin*, 2013 WL 1500360, *6 (N.D.N.Y. 2013) (ALJ properly concluded plaintiff suffered from less than marked limitations in domain of acquiring and using information where teacher questionnaire indicated that plaintiff suffered from "slight" to "very serious" problems performing activities associated with domain).

Moreover, the ALJ's domain findings are supported by substantial evidence that shows C.B.'s conditions generally responded positively to treatment that did not require any inpatient or intensive mental health treatment, and allowed her to remain in a regular general education classroom with grades sufficient to advance to the next grade level. (Tr. 48, 50-51, 221, 296)

As discussed in the ALJ's decision, the record reveals that C.B. was diagnosed with ADHD in 2015 after her mother expressed concerns about fidgeting and defiant behavior observed at home and at school, as well as difficulty sleeping. (Tr. 341-42, 346-48) Throughout the relevant period, C.B.'s condition was managed with medication only (*see* Tr. 347-48, 354, 355, 359, 395-96, 427, 452, 484, 510, 551, 567), except for one psychotherapy evaluation in October 2018, which was cut short at her mother's request (Tr. 571)  Although the dosage and type of medication required periodic adjustments,

9

C.B.'s mother reported that the prescribed medication was effective in managing C.B.'s symptoms. (Tr. 183-87, 352-53, 355-56, 394, 426, 482, 509, 550, 564, 572) C.B. testified similarly that the medication helped her to concentrate and she did not get as distracted when she took it, but was easily distracted on the weekends when she did not take the medication. (Tr. 66) Plaintiff reported difficulties with C.B.'s behavior at home, but admitted that she often did not administer the medication to C.B. on the weekends or in the summer months. (Tr. 355-56, 380, 394, 450, 482, 564)

Reports from plaintiff about the effectiveness of C.B.'s medication are consistent with school records and statements from C.B's teachers, which reveal improvement in her ability to focus and respond appropriately when taking medication. In early 2017, one teacher indicated that C.B's behavior began to change in the early afternoon hours after her morning dose of medication wore off, so her providers added an afternoon dose, which led to improved behavior. (Tr. 231, 470, 482-84, 509-10) A teacher survey from January, 2018, indicated that C.B had difficulty staying focused "at time[s]" while on medication, but when she was not on medication she could not stay seated and was disrespectful. (Tr. 537) C.B's third grade teacher, Mr. Cole, noted that "when focused" she had the ability to "learn quickly" and "the potential of being at the head of the class." (Tr. 296) However, when she became distracted and involved in "drama," her lack of focus and attitude interfered with her progress. (*Id.*) He also stated that after taking medication, C.B was "a completely different student . . . polite, on task" and that when she "was not on her medication, we knew as soon as she walked in" because she "was unable to follow morning routines, procedures, tend to lessons." (Tr. 283)

Medical evidence considered by the ALJ also supports the ALJ's domain findings and evaluation of the opinion evidence. Examinations throughout the entire period were almost entirely unremarkable, and at most, documented no more than mild abnormalities. (Tr. 343, 347, 354, 356, 379-81, 395-96, 427, 451-52, 483-84, 510, 566, 570) An August, 2016, consultative examination revealed that C.B. was not taking any medications, and that she exhibited socially appropriate behavior, normal eye contact and language skills, and restless motor behavior, but goal-directed thought processes, euthymic mood and appropriate affect, intact attention and concentration, mildly impaired memory due to distractibility, and age-appropriate insight and judgment. (Tr. 380-81) The consultative examiner opined that C.B was no more than mildly limited and that her condition did "not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." (Tr. 382) Likewise, a psychological evaluation performed at University of Rochester Medical Center in October, 2018, revealed no abnormalities. (Tr. 570) Comments from C.B.'s pediatric providers indicate that her condition was either controlled or well-controlled with medication, with either no side effects or side effects "managed effectively." (Tr. 354, 427, 510, 551)

The ALJ acknowledged that C.B.'s impairments still caused some limitations and she still had "areas that need improvement," but noted that her medication was effective in school and led to improvement in her symptoms. (Tr. 17-24) Thus, the ALJ appropriately considered evidence of claimant's improvement with treatment and medication. *See Reices-Colon v. Astrue*, 523 Fed. Appx. 796, 799 (2d Cir. 2013); *see also* 20 C.F.R. § 416.926a(a)(3) (ALJ must consider the effects of medications or other treatment on a claimant's ability to function).

With respect to plaintiff's argument that the ALJ erred because he did not specifically reference Mr. Shanley's opinion in each of the domain findings (see Dkt. No. 13-1 at 18), the ALJ properly evaluated Mr. Shanley's opinion in his decision. (Tr. 16-17) Simply because Mr. Shanley's opinion was not discussed again within the rationale for each domain finding does not mean the ALJ failed to consider it, nor does it render the domain findings flawed. See Salmini v. Comm'r of Soc. Sec., 371 Fed. Appx. 109, 112-13 (2d Cir. 2010) (noting the Court is "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence") (citing Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982) (internal quotations omitted)). Further, where the evidence in the record permits the Court "to glean the rationale of an ALJ's decision," the ALJ need not mention every item of testimony presented or even explain why particular evidence was considered unpersuasive or insufficient to support a conclusion of disability. Miller v. Comm'r of Soc. Sec., 409 Fed. Appx. 384, 388 (2d Cir. 2010).

As discussed earlier, the ALJ complied with regulations requiring him to consider the record as a whole in making the domain findings. 20 C.F.R. §§ 416.924a, 416.926a. The ALJ's findings must only "afford [the Court with] an adequate basis for meaningful judicial review, appl[y] the proper legal standards, and [be] supported by substantial evidence such that additional analysis would be unnecessary or superfluous[.]" McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

In sum, the ALJ discussed the clinical observations of C.B.'s providers about her functioning, her symptoms, psychological evaluations, treatment history, school records,

and the effectiveness of her medications, and created a logical bridge from this evidence to the domain findings as the regulation directs. (Tr. 14-24) See 20 C.F.R. §§ 416.924a, 416.926a. The decision is supported by substantial evidence and free of legal error.

Because the ALJ properly found that C.B. did not have marked limitations in two functional domains or an extreme limitation in one functional domain, C.B. did not have an impairment or combination of impairments that functionally equaled a listed impairment. See 20 C.F.R. § 416.926a(a). Accordingly, the ALJ reasonably concluded that C.B. was not disabled within the meaning of the Social Security Act.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 17) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   May 5, 2021
         Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge